UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

DIANE WELLS                                                                                     PLAINTIFF

v.                                                                       CIVIL ACTION NO. 3:10-CV-376

CRAIG & LANDRETH CARS, INC., *et al.*                                              DEFENDANTS

### MEMORANDUM OPINION

This matter is before the court on a motion by the sole remaining defendant in this case, Craig and Landreth Cars, Inc. ("Craig and Landreth"), for summary judgment (DN 114). The plaintiff, Diane Wells, has filed a response to the motion (DN 116), and Craig and Landreth thereafter filed a reply (DN 117). Thus, the motion is ripe for decision.

In the fall of 2009, Wells began looking to buy a new car. Although she planned to finance the purchase of a car through either a dealership or a credit union to which she belonged, Wells had not done any further investigation as to how she would finance the purchase. Wells often drove past Craig and Landreth, a car dealership located near her home in Louisville, Kentucky. One day, Wells noticed a Mitsubishi car displayed in front of the dealership. The car was advertised as having "low miles." Wells called Craig and Landreth and learned that the car was within her $12,000 to $14,000 price range.

In late December 2009, Wells visited Craig and Landreth to see the car. There, she spoke to Lloyd Rucker about taking the car for a test drive. She gave him her driver's license and proof of insurance and then took the car for a test drive. During the test drive, Wells became concerned that the car might have a mechanical problem, so she decided she wanted to have a mechanic inspect it

before she purchased it. After the test drive, she spoke to another Craig and Landreth employee, Robby Britain, who, according to Wells, implored her to purchase the car before the end of the year. Wells recalled that Britain became so animated over the issue that he slammed his fist on a desk and yelled at Wells. The next day, Wells returned to Craig and Landreth and took the car to a mechanic for an inspection. The mechanic's report indicated that certain repairs needed to be done. Wells took the car back to Craig and Landreth, where she spoke to Rucker and Britain. Wells requested that Craig and Landreth repair the car and reduce its price.

On January 2, 2010, Wells signed a purchase order for the car. In the following days, Wells learned that she could not obtain financing from her credit union. After learning that, she called Craig and Landreth and spoke to Britain. Wells and Britain had differing recollections of their conversations. According to Britain, during their phone conversations Wells cried and asked for help in obtaining financing, so Britain offered to help her get a loan by calling banks and "put[ting his] heart into the conversations with the lenders." Britain filled out a credit application for Wells, asking her the relevant questions over the phone. He then submitted the application to financial institutions, including, among others, Chase Bank and Kentucky Telco. Britain also called contacts at those institutions to ask them to help Wells out. However, Britain's contacts indicated they were unable to provide Wells credit.

By contrast, Wells recalled that due to Britain's aggressive behavior the first time she went to Craig and Landreth, she decided not to obtain financing through the dealership. Thus, upon learning that she could not obtain financing for the car through her credit union, Wells called Britain and told him that she was no longer interested in purchasing the car. When Britain pushed the issue, stating that he had persons to contact that would help her obtain credit, Wells responded that she was

not interested in Britain trying to find financing for her. Wells denied crying during her telephone conversations with Britain.

On Saturday, January 9, 2010, Wells received a letter from Kentucky Telco stating that Wells had applied for financing a car purchase at Craig and Landreth, but that she had been denied. The following Monday, Wells called Kentucky Telco and found out that Craig and Landreth had applied for credit for her. Craig and Landreth's actions caused six inquiries to appear on Wells' credit report. Nevertheless, around January 12, 2010, Wells was able to purchase a Toyota car, for which she obtained financing through the dealer after she filled out a credit application.

On April 13, 2010, Wells filed this action in the Jefferson County, Kentucky, Circuit Court against Craig and Landreth and various other defendants. The defendants removed the case to this court pursuant to federal question jurisdiction. The court has since dismissed the claims against all defendants other than Craig and Landreth. Wells' claims against Craig and Landreth are for violation of the Fair Credit Reporting Act ("FCRA"), the Kentucky Consumer Protection Act, the Kentucky Uniform Electronic Transaction Act, the Equal Credit Opportunity Act, and the Gramm-Leach-Bliley Act, as well as for common law invasion of privacy. Craig and Landreth has moved for summary judgment as to each of those claims.

To prevail on a motion for summary judgment, the movant must show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine issue of material fact arises when there is sufficient evidence on which the jury could reasonably find for the non-moving party. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1985). The disputed issue need not be resolved conclusively in favor of the non-moving party, but that party must present sufficient probative evidence which makes it necessary

to resolve the parties' differing versions of the dispute at trial. *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-289 (1968). The evidence must be construed in the light most favorable to the non-moving party. *Summers v. Leis*, 368 F.3d 881, 885 (6th Cir. 2004).

To begin, Wells concedes that four of her six claims against Craig and Landreth should be dismissed. In that respect, Wells agrees with the defendants that her claims under the Kentucky Consumer Protection Act are preempted by the FCRA, that the Gramm-Leach-Bliley Act does not allow for a private cause of action, and that her claim for a violation of the Kentucky Uniform Electronic Transaction Act fails. Wells also states that she will not pursue any claim under the Equal Credit Act. Accordingly, the court will dismiss those four claims with prejudice.

The court now turns to Wells' two remaining claims, for violation of the FCRA and for common law invasion of privacy, which the court will address in that order. "Congress enacted FCRA in 1970 to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007). The FCRA provides a private right of action for violations of the terms therein. Under 15 U.S.C. § 1681o, a person who negligently fails to comply with any requirement under the FCRA is liable for actual damages caused to the affected consumer. Under 15 U.S.C. § 1681n, a person who willfully fails to comply with a requirement under the FCRA may be liable for either actual damages or statutory damages ranging from $100 to $1,000, as well as for punitive damages.

Wells argues that Craig and Landreth violated 15 U.S.C. § 1681b(a), which limits the use of consumer reports to certain enumerated permissible circumstances and no others. As relevant here, § 1681b(a) provides:

> [A]ny consumer reporting agency may furnish a consumer report under the following circumstances and no other:

> . . .
>
> (3) To a person which it has reason to believe –
>
> (A) intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer; or
>
> . . .
>
> (F) otherwise has a legitimate business need for the information –
>
> (i) in connection with a business transaction that is initiated by the consumer[.]

*Id.*[1]

Craig and Landreth argues that it had reason to believe it was obtaining Wells' credit report to use in connection with a credit transaction or for an otherwise legitimate business need in connection with a business transaction initiated by Wells. However, viewing the evidence in the light most favorable to Wells, Craig and Landreth accessed Wells' credit report after Wells indicated that she did not want to purchase the car because she could not obtain financing from her credit union. And under that version of events, Craig and Landreth had no reason to believe that it was accessing her credit report in connection with a credit or business transaction since Wells had made clear that she was not seeking to obtain financing through Craig and Landreth. Thus, the court finds

---

[1] Although the language of 15 U.S.C. § 1681b(a)(3) refers to furnishers of consumer reports, Craig and Landreth, citing *Smith v. Bob Smith Chevrolet, Inc.*, 275 F. Supp. 2d 808 (W.D.Ky. 2003), concedes that the statutory provision also applies to users of consumer reports. The court in *Smith* noted that "numerous other courts" have come to the same conclusion. 275 F. Supp. 2d at 815 n.2 (citing *Hansen v. Morgan*, 582 F.2d 1214, 1220 (9th Cir. 1978); *Pappas v. City of Calumet City*, 9 F. Supp. 2d 943, 946 (N.D.Ill. 1998)). Thus, this court accepts that Craig and Landreth was subject to the limitations for using credit reports set forth in 15 U.S.C. § 161b(a)(3).

that there is a genuine dispute of material fact as to whether Craig and Landreth violated § 1681b(a).[2]

Craig and Landreth also argues that it cannot be liable under either § 1681n or § 1681o because its reasonable belief that it had a permissible purpose for accessing Wells' credit report precludes a finding that it was willfully or negligently noncompliant with a requirement of the FCRA. Again, Craig and Landreth's argument fails because, under Wells' version of events, Craig and Landreth did not have a reasonable basis for believing it could permissibly access her credit report. A jury that believed Wells' account that she told Britain that because she was not able to obtain financing for the car through her own credit union she was not interested in purchasing the car could reasonably find that Craig and Landreth was willfully or negligently noncompliant with § 1681b(a) when it accessed her credit report anyway. *See generally Safeco*, 551 U.S. at 57-58 (holding that the willful standard in § 1681n(a) covers both knowing and reckless violations of the FCRA).

Craig and Landreth further argues that Wells cannot prove that she suffered any actual damages under the FCRA. Craig and Landreth puts forth evidence showing that the amount of actual damages suffered by Wells was minimal. For instance, Craig and Landreth notes that although Wells complains that Craig and Landreth caused six inquiries to appear on her credit report, Wells had other significant issues on her credit report, such as two bankruptcies, one of which was still pending at the time of Craig and Landreth's actions. Additionally, Craig and Landreth notes that Wells was

---

[2] In her second amended complaint, Wells also cites the following substantive sections of the FCRA: 15 U.S.C. §§ 1681m, 1681q, and 1681s-2. However, those citations appear to be unrelated to any factual allegations in the complaint. Moreover, Wells puts forward no argument in its response papers that those sections are applicable to her claims, instead focusing solely upon §§ 1681b, 1681n, and 1681o. Thus, the court will dismiss with prejudice any claims based upon 15 U.S.C. §§ 1681m, 1681q, and 1681s-2.

able to obtain financing for a car approximately one week after Craig and Landreth accessed her credit report, and that there is no evidence that she was denied any loans or forced to pay higher interest rates because of the credit inquiries caused by Craig and Landreth's actions.

However, as Craig and Landreth also acknowledges, "It is well settled that actual damages under the FCRA are not limited to out-of-pocket expenses and may instead include humiliation and mental distress." *Boris v. Choicepoint Servs., Inc.*, 249 F. Supp. 2d 851, 859 (W.D.Ky. 2003). Moreover, a "[p]laintiff's credible testimony can support her own claim of emotional distress." *Id.* at 861. Craig and Landreth concedes that Wells' testimony could support her claim for emotional injuries, but contends that her claim "arguably fails" because her testimony in that regard is not "credible." That is exactly the sort of weighing of the evidence that is left to the jury, not to the court on a summary judgment motion. The court finds that there is sufficient evidence for a jury to find that Wells has damages for mental and emotional distress, and thus the court will deny Craig and Landreth's motion for summary judgment on the issue of damages.

Additionally, although § 1681o limits damages for negligent violations of the FCRA to actual damages suffered by a consumer, § 1681n allows for statutory and punitive damages for willful violations of the FCRA. As detailed above, the court has found that the evidence, viewed in the light most favorable to Wells, would be sufficient for a reasonable jury to find that Craig and Landreth willfully violated the FCRA; thus, Wells could potentially obtain statutory and punitive damages regardless of whether she proves actual damages. For that reason, too, the court cannot grant summary judgment to Craig and Landreth on the issue of damages.

As to Wells' invasion of privacy claim, Craig and Landreth argues that the claim is preempted by the FCRA. 15 U.S.C. § 1681h(e) provides:

> Except as provided in sections 1681n and 1681o of this title, no consumer may bring any action or proceeding in the nature of . . . invasion of privacy . . . with respect to the reporting of information against any . . . user of information . . . based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report[,] except as to false information furnished with malice or willful intent to injure such consumer.

Thus, the section, by its very terms, preempts only those state law claims that relate to "the reporting of information." Here, Wells' invasion of privacy claim is not based on Craig and Landreth's reporting of information. Instead, Wells' invasion of privacy claim is premised on Craig and Landreth having accessed her credit report without permission or authority. Accordingly, 15 U.S.C. § 1681h(e) does not preempt Wells' state law claim.

Craig and Landreth also argues that Wells cannot establish a *prima facie* case for invasion of privacy. In *McCall v. Courier-Journal & Louisville Times Co.*, 623 S.W.2d 882, 887 (Ky. 1981), the Kentucky Supreme Court adopted the principles of the tort of invasion of privacy as enunciated in the Restatement (Second) of Torts (1976). The Kentucky Supreme Court quoted the pertinent section of the Restatement:

> (1) One who invades the right of privacy of another is subject to liability for the resulting harm to the interests of the other.
>
> (2) The right of privacy is invaded by
>
> (a) unreasonable intrusion upon the seclusion of another . . . ; or
>
> (b) appropriation of the other's name or likeness . . . ; or
>
> (c) unreasonable publicity given to the other's private life . . . ; or
>
> (d) publicity that unreasonably places the other in a false light before the public.

*McCall*, 623 S.W.2d at 887. Wells argues that Craig and Landreth unreasonably intruded upon her seclusion.

In *Smith*, this court considered the contours of a claim for unreasonable intrusion upon seclusion. 275 F. Supp. 2d at 821-822. Noting that there was no published opinion from a Kentucky court concerning the details of such a claim, this court predicted that the Kentucky Supreme Court would adopt the Restatement's standards for the claim. *Id.* at 822. The Restatement states, "One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of privacy, if the intrusion would be highly offensive to a reasonable person." Restatement (Second) of Torts § 652B (1977). Extrapolating from the standards of the Restatement, this court found that to prevail on a claim for intrusion upon seclusion, a plaintiff must show "(1) an intentional intrusion by the defendant, (2) into a matter the plaintiff has a right to keep private, (3) which is highly offensive to a reasonable person." *Smith*, 275 F. Supp. 2d at 822.

Here, Craig and Landreth does not seem to dispute that Wells had a right to keep her credit report private. It instead contends that Wells cannot meet the first and third elements of the cause of action because, according to Craig and Landreth, it accessed her credit report in an attempt to help her obtain financing for a car purchase. However, a reasonable jury that believed Wells' account of events could find that Craig and Landreth intentionally intruded upon her seclusion by accessing her credit report after she had concluded the negotiations with Craig and Landreth and informed them that she did not want to buy the car. Moreover, if a jury believed that evidence, it could reasonably find that Craig and Landreth's accessing her credit report and submitting it to financial institutions

- 9 -

would be highly offensive to a reasonable person. Thus, the court will deny Craig and Landreth's motion for summary judgment as to the invasion of privacy claim.

In sum, the court will deny Craig and Landreth's motion for summary judgment as to Wells' claims pursuant to 15 U.S.C. §§ 1681n and 1681o for violation of 15 U.S.C. § 1681b and as to her claim for invasion of privacy. As to the remainder of Wells' claims, Craig and Landreth's motion will be granted and the claims will be dismissed with prejudice. A separate order will issue in accordance with this opinion.

December 12, 2012

Charles R. Simpson III, Judge
United States District Court